UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| MELINDA CASSIDY, | ) | |
| --- | --- | --- |
| | ) | Civil Case No. 6:19-cv-000201-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| AETNA LIFE INS. CO., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on cross-motions for judgment. In her Motion, Ms. Cassidy asks the Court to overturn Aetna's administrative decision denying her long-term disability benefits. [R. 31.] In its Motion, Aetna asks the Court to uphold its denial. [R. 32.] For the reasons that follow, the Court will **GRANT** Aetna's Motion.

**I**

This dispute arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. As such, the Court exercises federal question subject matter jurisdiction. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52-56 (1987). The important facts in this case are undisputed. At the time this dispute arose, Ms. Cassidy was fifty-four years old. [R. 31-1 at 1.] She began working for General Dynamics Corporation in March 2003 and worked her way up to the position of a senior analyst. *Id.* In June 2018, Ms. Cassidy was diagnosed with "chronic tonsillitis, chronic pharyngitis, and pain in throat." *Id.* at 2. Prior to receiving that diagnosis, she had also been diagnosed with chronic fatigue syndrome and had

taken "intermittent leaves of absence" from October 2017 until June 2018. *Id.* Following these diagnoses, Ms. Cassidy applied for short-term disability from Sedgwick Management Services, the administrator for General Dynamics short-term disability benefit policy; her application was initially denied by Sedgwick but was later granted on internal appeal. [R. 31-1 at 2.] Sedgwick's grant of short-term disability benefits indicated that the benefits were awarded to allow Ms. Cassidy "time off for symptom stabilization, additional testing, and reevaluation." *Id.*

Once her short-term benefits were soon to expire, Ms. Cassidy applied for long-term disability benefits. *Id.* Ms. Cassidy's long-term disability plan, Group Insurance Policy GP-100515, became effective on January 1, 2006, and was paid into throughout the entirety of her employment. *Id.* After being denied long-term disability from her employer, Ms. Cassidy appealed the decision to Aetna Insurance Company, a company which General Dynamics had "vested with full discretionary authority to construe and interpret the terms of the Policy and to determine eligibility for benefits thereunder […]" [R. 32-1 at 2.] To grant long-term disability, the Policy required a determination that:

- [Ms. Cassidy] was not able to perform the material duties of [her] own occupation solely because of: disease or injury; and
- [Ms. Cassidy's] work earnings were 80% or less of [her] adjusted predisability earnings.

*Id.* Additionally, the Policy defined "material duties" as "those normally required for the performance of your own occupation" and "cannot be reasonably: omitted or modified," "except that working more than 40 hours per week is not a 'material duty.'" *Id.* at 3. If these conditions were proven, the long-term disability plan entitled Ms. Cassidy to twenty-four months of disability benefits. *Id.*

In support of her application, Ms. Cassidy supplied documentation from Gloria Taylor, APRN. [R. 31-1 at 3.] In the documentation[1], Nurse Taylor diagnosed Ms. Cassidy with chronic fatigue syndrome and fibromyalgia and indicated that she was to be "off work indefinitely." [R. 32-1 at 5.] However, the only treatment plan Nurse Taylor provide was "patient education." *Id.* After reviewing this documentation, Aetna's clinic consultant nurse indicated that, other than needing a tonsillectomy that would require around two weeks of recovery, support had not been provided to indicate that Ms. Cassidy qualified for long-term disability. *Id.* Aetna then asked Ms. Cassidy to supplement her application and clarify "what was causing impairment from seated work," to supply all medical records since September 1, 2018, and to have Nurse Taylor complete a worksheet and provider statement. *Id.* Ms. Cassidy subsequently amended her application, provided Aetna with her medical records, and had Nurse Taylor complete the worksheet. In the worksheet, Nurse Taylor stated that Ms. Cassidy was "unable to sit or stand for any length of time," but could "occasionally sit, stand, stoop, and walk." *Id.* Moreover, she provided a list of Ms. Cassidy's final diagnoses: chronic fatigue syndrome, fibromyalgia, pain in her joints, depression with anxiety, serratia marcescens infection, and a thyroid nodule.[2] *See id.* at 5-6.

On December 27, 2018, Aetna reviewed Ms. Cassidy's supplementation and denied her claim for long-term disability due to a "lack of evidence to support neurological, physical and psychological impairment from seated activities" and due to the insufficiency of the documentation provided by Nurse Taylor. [R. 32-1 at 6.] In early 2019, Ms. Cassidy filed an

---

[1] The documentation included notes from Ms. Cassidy's prior visits to Nurse Taylor and notes from a visit on September 6, 2018. [R. 32-1 at 5.]

3

appeal of Aetna's decision. *Id.* In her appeal, Ms. Cassidy supplied additional medical records[3] and, once again, reiterated that Nurse Taylor indicated she should be "off work indefinitely." [R. 32-1 at 6.] To assist with the appeal, Aetna contracted with a third-party vendor to have Ms. Cassidy's documentation reviewed by an independent physician. *Id.* at 7. The independent physician, Dr. Gary Nudell, a physician board certified in Internal Medicine, did not examine Ms. Cassidy in person but, instead, conducted only a file review of her records. *Id.* In his review, Dr. Nudell reviewed all of the documentation provided by Ms. Cassidy and conferred with Nurse Taylor, Ms. Cassidy's ear, nose, and throat doctor, and Ms. Cassidy's gastroenterologist. *Id.* Upon review, Dr. Nudell concluded that there was no "objective basis" to prove that Ms. Cassidy had any sort of functional limitation that would prevent her from conducting the material duties of her sedentary work. *Id.* Although Dr. Nudell agreed that Ms. Cassidy presented subjective evidence of limitation, he concluded that she had provided no objective evidence in support; moreover, none of Ms. Cassidy's medical providers could provide objective proof of her limitations and, instead, indicated that their diagnoses and reported limitations were based solely on Ms. Cassidy's subjective complaints. *See id.* at 7-8.

In response to Dr. Nudell's findings, Ms. Cassidy reiterated her earlier arguments and, additionally, provided a letter from the Social Security Administration which stated that she had been found disabled under its rules as of January 2019. *Id.* Upon review of Dr. Nudell's findings and Ms. Cassidy's response, Aetna denied the appeal due to a lack of objective evidence that Ms. Cassidy could not perform the material duties of her job and because Dr. Nudell had agreed with Aetna's conclusion based on his file review. *Id.* Now, Ms. Cassidy has appealed

---

[3] The additional records included notes from a visit with the Mayo Clinic in 2010. At that visit, the "Mayo Clinic rheumatologist saw no evidence of rheumatological processes or fibromyalgia." [R. 32-1 at 6.] In 2018, however, Nurse Taylor found that Ms. Cassidy did have fibromyalgia.

4

Aetna's finding with this Court and argues that the denial of her long-term disability benefits should be overruled. Specifically, Ms. Cassidy alleges that Dr. Nudell improperly conducted a file review instead of examining her in person, that Aetna had a conflict of interest, that Aetna did not adequately explain why its decision differed from the SSA's finding and Sedgwick's earlier approval of short-term disability, and that Aetna's objective evidence requirement was improper.

## II

When an ERISA plan administrator's termination of benefits is challenged, "courts review such challenges to benefit determinations under the *de novo* standard, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *University Hosp. of Cleveland v. Emerson Electric*, 202 F.3d 839, 845 (6th Cir. 2000) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). When a benefit plan gives the administrator discretionary authority to determine eligibility for benefits, the Court applies "the highly deferential arbitrary and capricious standard of review." *Cox v. Std. Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). Under this standard, "when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (citing *Univ. Hosp. of Cleveland*, 202 F.3d at 846.) Compared to other standards, the arbitrary and capricious standard is the "least demanding form of judicial review of administrative action." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 658 (6th Cir. 2013). Moreover, a Court's review of the decision of a plan administrator is limited to the administrative record. *Id.* In this matter, it is uncontested that Ms. Cassidy's plan gives Aetna discretionary authority to determine eligibility for benefits. Accordingly, the arbitrary and capricious standard of review is applicable. [R. 32-1 at 9; R. 31-1 at 5-6.]

**A**

Ms. Cassidy first argues that Aetna's reliance on the opinion of Dr. Nudell renders its denial of long-term disability arbitrary and capricious. "While there is 'nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination,' the Sixth Circuit has noted that it is a 'factor to be considered in reviewing the propriety of an administrator's decision regarding benefits." *Miller v. Aetna Life Ins. Co.*, 2020 U.S. Dist. LEXIS 78457 at *13 (S.D. Ohio 2020) (quoting *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006)). Moreover, an administrator's decision to conduct a file review in lieu of a physical exam is "just one more factor in [the Court's] overall assessment" of whether an administrator acted in an arbitrary and capricious fashion. *Calvert v. Firststar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).

During his review process, Dr. Nudell did not examine Ms. Cassidy in person. Instead, he conducted a file review and interviewed Ms. Cassidy's medical providers. [R. 31-1 at 11-14.] From his review, Dr. Nudell concluded that Ms. Cassidy had provided no objective evidence that she could not perform the material duties of her occupation. Moreover, Dr. Nudell's interviews with Ms. Cassidy's medical providers revealed that the medical providers themselves could provide no objective evidence that Ms. Cassidy could not perform her job; instead, the medical providers indicated that their diagnoses were primarily based on Ms. Cassidy's subjective complaints of pain. *See id.* Based on these findings, Aetna upheld its denial of Ms. Cassidy's claim. [R. 32-1 at 8.] Now, Ms. Cassidy argues that Dr. Nudell should have examined her in person and that, because he did not do so, Aetna improperly relied on his findings. In support, Ms. Cassidy cites to case law in which the Sixth Circuit has held that when a doctor concludes that a patient's subjective indications of pain are not credible, an administrator cannot properly

rely on that doctor's findings unless he has conducted an in-person examination of the patient. *See e.g., Hanning v. Hartford Life & Accident Ins. Co.*, 140 F. Supp. 3d 654, 672 (S.D. Ohio 2015); *Miller*, LEXIS 78457 at *13-*20.

In response, Aetna argues that the cases to which Ms. Cassidy cites involve situations where "the question is the extent of a claimant's subjective symptoms in relation to an objective condition that is supported by treating physicians' physical examinations and testing." [R. 34 at 7.] Put otherwise, Aetna argues that Dr. Nudell did not conclude that Ms. Cassidy was being untruthful, that the extent of the pain she experiences is not real, or that she does not actually suffer from any of her diagnosed conditions. Instead, Aetna argues that Dr. Nudell concluded that Ms. Cassidy failed to document, by objective evidence, that her symptoms prevented her from performing the material duties of her sedentary work. *See id.* at 8. Though Ms. Cassidy argues in response that objective evidence of the limiting effect of her conditions was present in the record, including weight loss and one instance of elevated blood pressure, Aetna argues that these instances fail to objectively prove that she is unable to perform her job.[4] [R. 34 at 9.]

Aetna is correct. Because a plaintiff bears the burden of proof in an ERISA benefits case, Aetna was not required to seek out evidence on its own that Ms. Cassidy could not perform the material duties of her occupation. Instead, Ms. Cassidy's failure to provide that evidence led to the denial of her claim. *Javery v. Lucent Techs., Inc., Long Term Disability Plan for Mgmt. or LBA Emples.*, 741 F.3d 686, 701 (6th Cir. 2014). Although Dr. Nudell did not physically examine Ms. Cassidy, his review did not question the existence or severity of her conditions.

---

[4] While the Court recognizes that these symptoms could be considered objective proof that Ms. Cassidy suffers from the conditions she has been diagnosed with, the question at issue is whether Ms. Cassidy has provided objective evidence that she cannot do her job. Providing objective evidence that a person suffers from a medical condition is not the equivalent of providing objective evidence that a person's medical condition impairs her from performing the material duties of her occupation.

7

Instead, his review simply concluded that Ms. Cassidy had not proven that she could not perform her job. As a result, the cases to which Ms. Cassidy cites are factually distinct and, accordingly, Ms. Cassidy has failed to establish that Aetna's reliance on Dr. Nudell's review rendered its denial of long-term disability arbitrary and capricious.

B

Second, Ms. Cassidy argues that Aetna's decision was arbitrary and capricious because, as the entity which both decides whether a person is eligible for benefits and pays out the benefits, it has a "financial incentive [] to deny the claim." [R. 35 at 3.] "Although the existence of a conflict of interest does not alter our standard of review, [the] court must take into consideration the conflict as a factor in determining whether [the administrator's] decision was arbitrary and capricious." *Rose v. Hartford Fin. Servs. Group*, 268 Fed. Appx. 444, 449 (6th Cir. 2008) (citing *Calvert*, 409 F.3d at 293-93). "However, in evaluating such a conflict of interest, the court must 'look to see if there is evidence that the conflict in any way influenced the plan administrator's decision.'" *Id.* (citing *Evans*, 434 F.3d at 876). Here, Ms. Cassidy has provided no evidence, aside from a conclusory statement, that Aetna's decision was motivated by an alleged conflict. *See Cooper v. Life Ins. Co. of N. Am.*, 484 F.3d 157, 165 (6th Cir. 2007) ("conclusory statements, without more, do not suffice to render the district court's determination incorrect.") Moreover, Ms. Cassidy has raised this argument for the first time in her reply. Accordingly, this argument fails. *United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("We generally will not hear issues raised for the first time in a reply brief.")

8

# C

Third, Ms. Cassidy argues that Aetna did not adequately explain why its decision to deny her long-term disability benefits differed from the decisions of different entities. Prior to Aetna's final denial, the Social Security Administration deemed Ms. Cassidy disabled under its rules. [R. 35 at 5.] The Sixth Circuit has indicated that "an ERISA plan administrator's failure to address the Social Security Administration's finding that the claimant was 'totally disabled' is yet another factor that can render the denial of further long-term disability benefits arbitrary and capricious." *Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006) (citing *Calvert*, 409 F.3d at 295). While the Court agrees that the administrative record [R. 31-2] includes no analysis of the SSA decision or why Aetna's decision differed, it declines to give this argument significant weight because, as with the previous argument, Ms. Cassidy raises this argument for the first time in her reply. As a result, Aetna was unable to respond to Ms. Cassidy's claim.[5] *Crozier*, 259 F.3d at 517 ("We generally will not hear issues raised for the first time in a reply brief.")

Additionally, though Ms. Cassidy properly raises an argument that Aetna failed to distinguish its decision to deny long-term disability benefits from the decision to grant short-term disability benefits made by Sedgwick Management Services, the administrator for General Dynamics short-term disability benefit policy, her argument is meritless. [R. 33 at 6.] Following her diagnoses, Ms. Cassidy was granted short-term disability from Sedgwick to allow her "time off for symptom stabilization, additional testing, and reevaluation." [R. 31-1 at 2.] Now, Ms. Cassidy argues that because Aetna failed to describe why its decision differed from Sedgwick's award of short-term disability, its decision is arbitrary and capricious. [R. 31-1 at 10; R. 33 at 6.]

---

[5] Moreover, even if the Court were to give this argument significant weight, the balance in this matter would still weigh in favor of upholding Aetna's decision under the arbitrary and capricious standard because the remainder of Ms. Cassidy's arguments are without merit.

Ms. Cassidy cites to no case law in support of this argument. *See id.* In response, Aetna argues that Sedgwick is a separate entity than Aetna and therefore decisions that Sedgwick makes have no bearing on Aetna's conclusion. [*See* R. 34 at 4.] Moreover, Aetna argues that Ms. Cassidy was granted short-term disability to recover from symptoms she was experiencing at the time and that the approval of a short-term disability claim "based on different evidence and disabling symptoms" is not proof that Ms. Cassidy remained disabled when she requested long-term disability. *Id.* at 5. The Court agrees with Aetna. Sedgwick and Aetna are different entities who reviewed different sets of proof at different points in time. [R. 32-1 at 3-4.] Ms. Cassidy has provided no legal support for her argument that Sedgwick's decision binds Aetna or that, similar to the SSA context, Aetna should have explained how it reached a different conclusion. Accordingly, her argument fails. *See, e.g.*, *Thornton v. Western & Southern Fin. Group Beneflex Plan*, 797 F. Supp. 2d 796, 807 (W.D. Ky. 2011) (finding that a company's short and long-term disability policies require different analyses and do not create a binding effect on one another).

**D**

Finally, Ms. Cassidy argues that Aetna improperly required that she provide objective evidence that her medical condition prevents her from performing the material duties of her occupation. As an initial argument, Ms. Cassidy states that, because Aetna's plan did not explicitly require objective evidence of impairment, Aetna's subsequent requirement of such evidence renders its denial arbitrary and capricious. However, Sixth Circuit precedent clearly indicates that an administrator can require a claimant to provide objective medical evidence of the functional limitations resulting from a medical condition, "even when such a requirement does not appear among the plan." *Hunt v. Metro. Life Ins. Co.*, 587 Fed. App'x 860, 862 (6th

Cir. 2014) (citing *Cooper v. Life Ins. Co.F of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007)). Accordingly, this argument is meritless.

Next, Ms. Cassidy argues that her debilitating conditions, chronic fatigue syndrome and fibromyalgia, are not easily proven by objective evidence because the symptoms of those conditions present primarily through subjective reports of pain. [R. 31-1 at 10-11.] In response, Aetna argues that *Rose v. Hartford Fin. Serv. Group*, 268 Fed. App'x 444 (6th Cir. 2008) controls and allows it to require objective evidence of functional limitation, even when a claimant's medical condition does not present itself easily to objective observation. [R. 32-1 at 12.] Aetna is correct. The claimant in *Rose*, like Ms. Cassidy, suffered from fibromyalgia and chronic fatigue syndrome. And just like in this matter, the claimant's request for long term disability was denied because she failed to provide objective evidence of the impact of her medical condition on her ability to perform her occupation. *Id.* at 453-54. On appeal, the Sixth Circuit ruled that, although "it would have been unreasonable for [the administrator] to request objective evidence of chronic fatigue syndrome and fibromyalgia," "it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity." *Id.* Accordingly, because Ms. Cassidy failed to provide objective evidence of her functional limitations, after repeatedly being asked to do so, Aetna properly denied her claim.[6]

In a final pitch, Ms. Cassidy argues that the evidence she provided, including proof of weight loss, a single instance of elevated blood pressure, and a single noted appearance of fatigue, satisfied her duty to provide objective evidence of functional limitation. [R. 35 at 9.]

---

[6] The Court recognizes the difficulty of providing objective evidence of functional limitation caused by conditions which primarily present themselves with symptoms invisible to those outside of the person suffering. However, Ms. Cassidy could have, perhaps, submitted herself to a study of the impact of her pain on her ability to perform her occupation. Similarly, Ms. Cassidy might have compiled research on the impact of chronic fatigue syndrome and fibromyalgia on the ability of a person to perform occupational duties. It was not Aetna's duty to find this information for Ms. Cassidy because, as the claimant, she held the burden of proof. *Javery*, 741 F.3d at 701.

11

Aetna responds that these instances do not satisfy Ms. Cassidy's duty. The Court agrees. Although these symptoms arguably prove the existence of her conditions, Aetna did not require objective proof that Ms. Cassidy suffered from chronic fatigue syndrome or fibromyalgia. Instead, Aetna required objective evidence that her medical conditions prevented her from performing the material duties of her occupation. The evidence provided by Ms. Cassidy was insufficient to prove functional limitation. Consequently, Aetna's denial of long-term disability was not arbitrary and capricious.

### III

Aetna's decision to deny Ms. Cassidy long-term disability benefits was the "result of a deliberate, principled reasoning process […] supported by substantial evidence." *Elliot v. Metro. Life Ins. Co.*, 473 F. 3d 613, 617 (6th Cir. 2006). Accordingly, Ms. Cassidy's Motion for Summary Judgment [R. 31] is **DENIED** and Aetna's Motion for Judgment [R. 32] is **GRANTED**. Judgment in this matter will follow.

This the 10th day of May, 2021.

Gregory F. Van Tatenhove
United States District Judge